**William L. McCRAE, Plaintiff-Appellant,**

v.

**W.T. HANKINS, et al.,**
**Defendants-Appellees.**

No. 82–3621.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 6, 1984.

864

Steve LeBlanc, Baton Rouge, La. (Court-appointed), for plaintiff-appellant.

Joseph Erwin Kopsa, Baton Rouge, La., for defendants-appellees.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff William L. McCrae, an inmate at the Louisiana State Penitentiary, seeks redress for alleged violations of his right to due process. Pursuant to a magistrate's recommendation, the district court granted defendant's motion for summary judgment. We affirm as to the liberty claim but reverse as to the property claim.

I. *Facts*

In reviewing an order of summary judgment, we view the case in the same manner as the district court, asking whether there is any genuine issue of material fact and whether appellee was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bank of Commerce of Laredo v. City National Bank of Laredo,* 484 F.2d 284, 289 (5th Cir.1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974). Having read plaintiff's pro se response to the motion for summary judgment liberally, as we are required to do,[1] we find that the facts surrounding the loss of plaintiff's property are disputed. We therefore recite those facts in the light most favorable to plaintiff, the party opposing summary judgment.

On April 26, 1981, Sergeant Lionel Harris inspected McCrae's bed and discovered a file about eight inches long in a magazine under the mattress. Sergeant Harris filed a disciplinary report charging McCrae with possession of contraband, and plaintiff was immediately transferred to administrative lockdown pending a hearing before the Prison Disciplinary Board. At the time of the transfer, prison officials inventoried all personal property belonging to McCrae in the dorm in which he lived, but refused to inventory other of McCrae's property locked in the prison hobby shop. The next day, plaintiff appeared before the Prison Disciplinary Board and requested permission to call four inmate witnesses in his behalf. The Board denied McCrae's request, but continued the hearing for one week to allow time for an investigation.

When the hearing reconvened on May 4, 1981, McCrae again requested permission to call four witnesses who he claimed would testify that the file was placed under his mattress by another inmate without his knowledge. The Board again refused McCrae permission to call witnesses. It also refused to allow plaintiff access to a report written by the officer who investigated the charge against McCrae. Crediting the statement of Sergeant Harris, the Board found that McCrae had violated the prison rule against contraband, and plaintiff was transferred to "extended lockdown" in a maximum security unit. Plaintiff told defendant John Williams of his property in the hobby shop when Williams came to take McCrae to extended lockdown, but Williams refused to inventory the property.

The Board held a rehearing in McCrae's case on June 1, 1981. Statements by the four inmate witnesses were read into the record, each to the effect that the file had been placed under plaintiff's mattress by another inmate. Nonconfidential portions of the original investigative report were also made a part of the record. Reversing its prior decision, the Board found that McCrae had not violated prison rules and ordered that he be released from extended lockdown and returned to the general population in a housing unit other than that in which he had previously lived.

Upon returning to the general population, plaintiff asked Major Teer, supervisor of his new housing unit, about the property that had been left at the hobby shop. Lieutenant Faren Rachal was eventually con-

---

1. Defendants argue that, for the sake of determining subject matter jurisdiction, we are constrained as a court of limited jurisdiction to construe plaintiff's pro se complaint and other papers strictly. The argument is unfounded. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

tacted about the property and recalled that the more expensive items had been sent to McCrae's home and the rest had been given to inmate Anthony Smith. According to inmate Bobby Smith, Rachal opened McCrae's hobby shop locker and let inmates Anthony Smith and William Kissinger take McCrae's property. According to Rachal, Kissinger, and Anthony Smith, McCrae wrote letters to the two inmates asking Kissinger to mail the bulk of his property to plaintiff's friend Carolyn Lafleur and asking that the rest be given to Smith. Kissinger states by affidavit that he collected McCrae's belongings, which did not include several of the items listed by plaintiff, and that he mailed part to Ms. Lafleur and gave the rest to Anthony Smith. The property was not received by Ms. Lafleur and has never been recovered.

Plaintiff claims in this action that he was denied due process in two respects. First, his liberty interest was infringed without due process because of the Board's refusal to allow McCrae to call witnesses or present other favorable testimony at the hearings. Second, he was deprived of property without due process by the prison officials' intentional refusal to inventory and secure his belongings.

## II. *Denial of Liberty*

This plaintiff was placed in extended lockdown for just under a month on the basis of two hearings of which he had notice and at which he was present.[2] He was not, however, allowed to call, either in person or by affidavit, four witnesses who would testify in his favor, and he was not allowed to see the investigative report filed in his case. The report, which was before the Board, contained the investigator's statement that all four inmate witnesses he interviewed[3] agreed that the file had been placed under McCrae's mattress by another inmate. It also contained confidential information about the identity of that other inmate. Finally, the report reflected Sergeant Harris' view that the inmates' explanation was implausible: the guards had appeared too suddenly to have allowed another inmate time to slip the file under McCrae's bed, and the bed was neatly made at the time, not wrinkled as if recently disturbed.

The Supreme Court recently concluded in *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), that the Due Process Clause of the Fourteenth Amendment does not itself create in an inmate a protected interest in being confined in the general prison population. *Id.* at —— – ——, 103 S.Ct. at 869–70. Instead, the Clause standing alone requires only that an inmate be confined under conditions consistent with his sentence, *id.* at ——, 103 S.Ct. at 869 (citing *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)), and "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."[4] *Hewitt,* —— U.S. at ——, 103 S.Ct. at 870. *See Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (transfer for confinement in another state is within normal range of custody) *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (transfer within state is within normal range of custody); *cf. Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to mental hospital is not within normal range of custody). A state may, however, create by statute or regulation an interest protected by the Due Process Clause even though the same interest is not among those protected by the Clause standing alone. *E.g. Hewitt,* —— U.S. at —— – ——, 103 S.Ct.

---

**2.** Plaintiff does not claim that he was denied an opportunity to speak in his own behalf.

**3.** Plaintiff's counsel was unable to say at oral argument whether these were the same four witnesses proffered by McCrae, but a review of plaintiff's pro se complaint indicates that they were the same inmates. Complaint ¶ X.

**4.** Plaintiff does not distinguish his "extended lockdown" from the administrative segregation at issue in *Hewitt.* We assume they are identical for due process purposes. *See Hewitt,* —— U.S. at —— n. 1, 103 S.Ct. at 867 n. 1.

at 870–71; *Vitek,* 445 U.S. at 487–92, 100 S.Ct. at 1261–63 (state-created liberty interest in not being transferred to mental hospital); *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 11–13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) (parole); *Wolff v. McDonnell,* 418 U.S. 539, 556–57, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (revocation of good-time credits).

Regulations of Louisiana's Department of Corrections, in effect at the time McCrae was disciplined, were sufficient to extend to Louisiana inmates a protected liberty interest in not being confined to extended lockdown. The Supreme Court's most recent analysis of a state-created liberty interest in a prison setting came in *Olim v. Wakinekona, supra.* In concluding that Hawaii affords its inmates no protected interest in remaining in Hawaii prisons, the *Olim* Court relied entirely on the absence of any state-created "substantive limitations" on the discretion of prison authorities to transfer inmates. Under the regulations of Hawaii's Department of Social Services and Housing, Corrections Division, "the prison administrator's discretion to transfer an inmate is completely unfettered." —— U.S. at ——, 103 S.Ct. at 1747. Those same regulations did require that an advisory "Program Committee" conduct a hearing prior to prison transfers involving "a grievous loss to the inmate." *Id.* at ——, 103 S.Ct. at 1744 (quoting regulation). Further, they required that the inmate be given notice of the hearing and, with certain exceptions, an opportunity to confront and cross-examine witnesses. *Id. Olim* held, however, that even in the face of these procedural requirements, Hawaii had not created a protected interest because it had in no substantive way limited the discretion of the prison administrator to transfer the inmate in question:

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. If officials may transfer a prisoner "for whatever reason or for no reason at all," *Meachum,* 427 U.S., at 228, 96 S.Ct., at 1540, there is no such interest for process to protect. The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Id.* at ——, 103 S.Ct. at 1748 (citation and footnote omitted).

Louisiana has required that its inmates be provided with certain process before they may be confined in extended lockdown. First, the Louisiana Administrative Procedure Act (LAPA), La.Rev.Stat.Ann. §§ 49:950–:970 (West Supp.1983), applies to prison disciplinary proceedings, *id.* §§ 49:951(2), 49:967; *see Armistead v. Phelps,* 365 So.2d 468 (La.1978) (applying LAPA's judicial review provisions to prison disciplinary proceedings), and requires that the disciplinary board hold a hearing on reasonable notice at which all parties may present evidence and conduct cross-examination. The Louisiana Department of Corrections has by regulation expanded on LAPA's general requirements by providing that "[n]o prisoner can be placed in extended lockdown for any reason unless he has been afforded a full hearing before the Disciplinary Board ...." Disciplinary Rules and Procedures for Adult Prisoners at 6 (March 15, 1981) (Disciplinary Rules). The Department also requires that an "accused prisoner" be given a copy of the disciplinary or incident report at least 24 hours in advance of the hearing, and that he be afforded the opportunity to present evidence and witnesses [5] and the right to cross-examine his accuser "provided it is relevant and not repetitious." [6] *Id.* at 7, 9.

---

**5.** The prisoner's right to present witnesses is limited in two respects: first, this evidence must be relevant and nonrepetitious, Disciplinary Rules at 7, 9; and second, the board "has the option of stipulating expected testimony from witnesses" as long as it affords such stipulated testimony the weight it would have received had the witness actually appeared. *Id.* at 7.

**6.** The Disciplinary Rules also govern whether an accusing employee or prisoner victim may or must be summoned to the hearing; confi-

■ Even this rather thorough process, without more, would be insufficient under *Olim* to create in Louisiana inmates a protected liberty interest in remaining "free" of extended lockdown. *See also Hewitt,* —— U.S. at ——, 103 S.Ct. at 871. But the Department regulations also contain substantive limitations on a disciplinary board's power to place an inmate in extended lockdown:

> No prisoner can be placed in extended lockdown for any reason unless he has been ... found guilty of violating one or more serious rules [listed elsewhere], or of being dangerous to himself or others, or of being a serious escape risk, or of being in need of protection, or of posing a clear threat to the security of the facility, or of being the subject of an investigation conducted by non-institutional authorities into a serious felony.

Disciplinary Rules at 6. The discretion of a Louisiana disciplinary board to place an inmate in extended lockdown is therefore substantively limited by "particularized standards or criteria [that] guide the ... decisionmakers." *Olim,* —— U.S. at ——, 103 S.Ct. at 1747 (citing *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring)). We must conclude, then, that under these regulations, Louisiana inmates do have a substantive interest in being free of extended lockdown.[7]

■ Having determined that McCrae had a protected interest, we must now consider whether the process afforded him satisfied the minimum requirements of the Due Process Clause. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In this, we are guided by *Hewitt v. Helms, supra.* The *Hewitt* Court considered the process due an inmate facing "restrictive confinement," —— U.S. at —— & —— n. 1, 103 S.Ct. at 867 & 867 n. 1, in

light of the "wide-ranging deference" to be accorded the decisions of prison administrators. *Id.* at ——, 103 S.Ct. at 872 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979)). Under *Hewitt,* due process requires only that prison officials engage in an "informal, nonadversary review" of the evidence surrounding an inmate's restrictive confinement, and that the inmate receive "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to" restrictive confinement. —— U.S. at ——, 103 S.Ct. at 872. Indeed, the Court considered a written statement by the inmate ordinarily to satisfy this latter requirement. *Id.* *Hewitt* quite clearly did not require that an inmate facing disciplinary confinement be afforded the opportunity to present witnesses or evidence other than his own statement. *See also Baxter v. Palmigiano,* 425 U.S. 308, 320–22, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976).

■ Plaintiff in this case was given notice of the charge against him and, after a week-long investigation, was brought before the board for hearing at which he was apparently allowed to make his own statement. Given *Hewitt*'s balancing of the inmate's minimal interest in one form of confinement over another and the state's substantial interest in safeguarding the security of its prisons by controlling contraband within prison walls, we find these procedures constitutionally adequate despite the disciplinary board's apparently erroneous first finding. The constitution demands due process, not error-free decisionmaking, and the disciplinary board's decision in this case was supported by "some facts" before the board. *See Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir.1981).

### III. *Denial of Property*

Plaintiff contends that he was deprived of his property without due process when

---

dential informants may not be summoned. Disciplinary Rules at 7. *See Smith v. Rabalais,* 659 F.2d 539 (5th Cir.1981).

**7.** Defendants cite *Smith v. Rabalais,* 659 F.2d 539 (5th Cir.1981), to the contrary. The entire

discussion of due process in that case assumed the existence of a protected interest and focused on the level of process due an inmate at a disciplinary hearing involving possible confinement to maximum security.

certain prison guards refused to inventory and secure his belongings stored in a hobby shop locker.[8] We assume for the purpose of this decision that McCrae authorized no one to receive his property and that prison officials intentionally exposed that property to theft by failing to inventory and to secure it while McCrae was in lockdown. Plaintiff concedes and we therefore also assume that on those facts Louisiana law would afford him a tort action in the state courts. La. Civ.Code Ann. art. 2315 (West Supp.1983).

Defendants argue first that a state prisoner enjoys within the institution only those property rights that state law affords him, and that Louisiana has conferred on its inmates a privilege but no right to possess hobby materials and other non-necessary personal property within prison walls. They then state, somewhat cryptically, that "[i]nmates at the Louisiana State Penitentiary may own or possess such real [personal?] property but the keepers of these inmates are not the insurers against the loss of such property which is not occasioned directly by their fault." Appellee's Supplemental Brief at 9. Loss of property through defendants' "fault" is precisely the theory on which plaintiff sues, and we reject defendants' unsupported and drastic narrowing of the definition of property in a prison setting. Prison officials may obviously impose reasonable restrictions on the type and amount of personal property inmates are allowed to possess in prison, *e.g. Sullivan v. Ford,* 609 F.2d 197 (5th Cir. 1980), but when inmates are afforded the opportunity, whether by "right" or "privilege," to possess personal property, they enjoy a protected interest in that property that cannot be infringed without due proc-

ess. *See Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (hobby kit "unquestionably" falls within the definition of property).

Defendants' major argument is that the State of Louisiana has afforded McCrae all the process to which he is entitled. They rely on *Parratt v. Taylor, supra,* in which the Supreme Court held that the allegedly negligent loss by prison officials of an inmate's hobby kit infringed a property interest protected by the Due Process Clause, but that the state's tort-claims procedure provided all the process to which the inmate was constitutionally entitled. Thus, defendants contend that the tort claim available to this plaintiff in the state courts represents a post-deprivation remedy fully sufficient to compensate plaintiff for his alleged loss. The facts surrounding the loss of property in this case differ from those in *Parratt* in only one important respect: here, plaintiff alleges that prison officials intentionally exposed his property to theft; in *Parratt,* the plaintiff alleged only negligence. We have applied *Parratt* several times to hold that adequate state post-deprivation remedies foreclose federal due process claims for negligent deprivation of property, *see Burgess v. City of Houston,* 718 F.2d 151 (5th Cir.1983); *Thompson v. Steele,* 709 F.2d 381 (5th Cir.1983); *Loftin v. Thomas,* 681 F.2d 364 (5th Cir.1982), but we have not before faced the question whether *Parratt* also forecloses a due process claim grounded on an allegedly intentional deprivation of property.[9]

*Parratt* neither expressly limited its holding to negligent deprivations nor clearly extended it to those occasioned by inten-

---

**8.** Although plaintiff mentioned the Fourth Amendment in responding to defendants' motion for summary judgment, he has asserted in this court no substantive claim relating to the deprivation of property.

**9.** The several courts of appeals that have considered *Parratt*'s application to such a claim have split on the issue. *Compare Palmer v. Hudson,* 697 F.2d 1220, 1222–23 (4th Cir.1983) *and Flower Cab Co. v. Petitte,* 685 F.2d 192 (7th Cir.1982) (applying *Parratt*) *with Weiss v.*

*Lehman,* 676 F.2d 1320 (9th Cir.1982) *and Madyun v. Thompson,* 657 F.2d 868 (7th Cir.1981) (not applying *Parratt*). *See also Vail v. Board of Education of Paris Union School District,* 706 F.2d 1435 (7th Cir.1983) (breach of teacher employment contract; *Parratt* not applied); *Wilkerson v. Johnson,* 699 F.2d 325 (6th Cir. 1983) (*Parratt* limited to prisoner cases); *Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983) (*Parratt* applied to claim that sheriff violated due process by executing stale writ).

tional conduct. The plurality [10] phrased the issue before it as one "involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee." 451 U.S. at 541, 101 S.Ct. at 1916. "In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Id.* Justices White and Blackmun joined the *Parratt* opinion, but stated their understanding that the *Parratt* doctrine would not apply to deprivations of liberty interests or to deprivations of property caused by a state official's intentional conduct. 451 U.S. at 545, 101 S.Ct. at 1918 (White, J., concurring); *id.* at 545–56, 101 S.Ct. at 1918 (Blackmun, J., concurring). Less than a year after *Parratt* was decided, the Court confined its holding in a fundamental respect. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), it held that an available post-deprivation tort remedy does not undermine the due process claim of a plaintiff who raises a constitutional flaw in an established state procedure.

We have since interpreted *Logan* 's "narrow reading" of *Parratt,* and especially its approving reference to Justice Blackmun's *Parratt* concurrence, to prevent *Parratt* 's application in a case presenting an intentional deprivation of a protected liberty interest. *Brewer v. Blackwell,* 692 F.2d 387, 394–95 & 395 n. 11 (5th Cir.1982). In *Brewer,* we held that the "possibility" of post-deprivation state tort recovery did not suffice to afford one falsely arrested and detained the due process to which the Fourteenth Amendment entitled him. *Id.* at 395.

■ We do not believe that a majority of the Supreme Court would accord different treatment to an intentional infringement of a liberty interest and an intentional infringement of a property interest. Negligent acts of state officers are logically incapable of prediction or prevention. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. Post-deprivation redress is the only process available in such cases, and recovery in tort will typically be sufficient for that purpose under *Parratt.* Control is more likely against intentional acts. "When it is possible for a State to institute procedures to contain and direct the intentional actions of its officials, it should be required, as a matter of due process, to do so." *Id.* at 546, 101 S.Ct. at 1918 (Blackmun, J., concurring). We conclude that *Parratt* does not apply to procedural due process claims grounded in allegations of intentional deprivations of property by state officials.

The disputed facts surrounding the deprivation in this case thus become quite material: if the factfinder concludes that defendants intentionally deprived plaintiff of his property, then plaintiff's federal claim succeeds; if it concludes that at worst, defendants' conduct was merely negligent, then *Parratt* forecloses plaintiff's due process claim.

Accordingly, the judgment of the district court is AFFIRMED insofar as it relates to plaintiff's alleged denial of liberty without due process. It is REVERSED, however, with regard to the property claims and the case is REMANDED for further proceedings consistent with this opinion.

---

**10.** Although they found no deprivation of a protected property interest, Justices Stewart and Powell agreed that if there was a deprivation the available tort remedy satisfied the requirements of due process. 451 U.S. at 544–45, 101 S.Ct. at 1917–18 (Stewart, J., concurring); *id.* at 547 n. 1, 101 S.Ct. at 1919 n. 1 (Powell, J., concurring). *See also id.* at 554–55, 101 S.Ct. at 1923 (Marshall, J., concurring in part and dissenting in part).