**Lindelo M. DZANA, Plaintiff-Appellant,**

v.

**Charles C. FOTI, Jr., et al.,
Defendants-Appellees.**

No. 86–3668
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1987.

Jane Johnson, Supervising Atty., Karen L. Campbell, Student Atty., Tulane Law Clinic, New Orleans, La., for plaintiff-appellant.

Usry & Weeks, Freeman R. Matthews, Metairie, La., for defendants-appellees.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

An Immigration and Naturalization Service (INS) detainee appeals from the dis-

missal of his civil rights action against officials of the Orleans Parish prisons. Because we must hold that the district court applied the wrong legal standard in dismissing the case, we reverse and remand.

## I. BACKGROUND

Lindelo Moses Dzana arrived in the United States from South America as a stowaway on March 9, 1979. Dzana petitioned for asylum, claiming that, as a former member of the African National Congress, he would be in danger from both the government and his former colleagues if he were forced to return. The INS initially denied the asylum application and set Dzana's bond at $4,000. Dzana could not make the bond and was confined to the Orleans Parish prisons under a contractual arrangement between the INS and the parish.

While in prison, Dzana was disciplined several times by being sent to disciplinary segregation, on one occasion for more than thirty days. On August 23, 1985, the INS sent Dzana a letter revoking his bond with the following language:

In view of our subsequent determination that you have no further viable claim to possible asylum in the United States, or other administrative relief available, and in view of the clear threat to the peace and security of the United States due to your training and affiliation, *as reevidenced by your behavior during your encarceration* [sic], it is determined that the bond conditions be revoked and that you be henceforth detained without bond.

Plaintiff's Exhibit No. 1, at 2 (emphasis added).

In September 1985 Dzana filed a pro se civil rights complaint against prison authorities. In November 1985, Dzana filed an amended complaint alleging that he had received inadequate medical care, that he had been beaten, and that he had been disciplined without due process. In January 1986, the Tulane Law Clinic took over representation of Dzana. In March 1986, Dzana received asylum and was released from prison. After a bench trial held March 31, 1986, a magistrate concluded (1) that Dzana's claim of inadequate medical treatment alleged, at most, negligence under state law, and should be dismissed for lack of jurisdiction; (2) that prison staff had used no more than reasonable force on Dzana; and (3) that the procedures followed by Orleans prison officials before disciplining Dzana met the due process requirements set forth in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The district court accepted the magistrate's recommendation that all of Dzana's claims be dismissed with prejudice.

Dzana appeals only the district court's denial of his due process claim.

## II. DISCUSSION

■ A prisoner has a claim under section 1983 for placement in segregation only if he possessed a "liberty interest" in remaining among the general prison population. *Helms*, 459 U.S. at 466, 103 S.Ct. at 869; *McCrae v. Hankins*, 720 F.2d 863, 866 (5th Cir.1983). The due process clause, by itself, does not grant a prisoner the right to be free from segregation. *Helms*, 459 U.S. at 468, 103 S.Ct. at 869; *McCrae*, 720 F.2d at 866. However, local statutes and regulations, if they significantly limit prison authorities' discretion and carry mandatory force, can create a liberty interest. *Helms*, 459 U.S. at 469, 103 S.Ct. at 870; *Green v. McKaskle*, 788 F.2d 1116, 1125 (5th Cir. 1986); *McCrae*, 720 F.2d at 866; *Martin v. Foti*, 561 F.Supp. 252, 258 (E.D.La.1983).

■ In the instant case, Dzana's rights as to the severity of his confinement were governed by federal statutes and regulations, because Dzana was a federal prisoner.[1] *See* 28 C.F.R. § 500.1(d) (1986) (de-

---

1. If Orleans Parish regulations apply to the decision to place Dzana in disciplinary segregation, the result is the same. A district court in this Circuit has held that the Orleans Parish regulations concerning segregation are sufficiently mandatory to create a liberty interest. *Martin*, 561 F.Supp. at 258. The *Martin* court reproduced these regulations in the appendix, and we agree that they have mandatory force. *Id.* at 262–69. On remand, the district court in the instant case may consider whether the Orleans Parish prison regulations have been revised since 1983 in such a way as to change their mandatory character. Absent such proof or any contrary contention by the parties, we feel con-

fining the "institutions" to which the regulations apply as including metropolitan jails). The federal Bureau of Prisons regulations provide: "Disciplinary action may not be capricious or retaliatory" (*Id.* § 541.-10(a)(4)); "Specific sanctions are authorized for each category.... Imposition of a sanction requires that the inmate first is found to have committed a prohibited act" (*Id.* § 541.13(a)). The regulations then establish four offense categories, with specific sanctions for each. *Id.* § 541.13. These regulations resemble statutes and regulations found by previous courts to be clear and mandatory enough to create a liberty interest. *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985); *Helms,* 459 U.S. at 470, 103 S.Ct. at 870–71; *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *McCrae,* 720 F.2d at 867 (Louisiana state penitentiary regulations).

■ The second step in the inquiry is a determination of what level of process is due the prisoner. In making this determination, the courts balance the needs of prison administration against the deprivation suffered by the prisoner. *Helms,* 459 U.S. at 473, 103 S.Ct. at 872. A key consideration is the type of sanction imposed on the prisoner and any collateral consequences that sanction may carry with it. *Id.* Thus, the Supreme Court has held that a prisoner punished by solitary confinement and loss of good-time credits must receive: (1) "advance written notice," at least twenty-four hours before the hearing, of the charges against him; (2) a "written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken"; and (3) the op-

portunity "to call witnesses and present documentary evidence," so long as this right does not create a security risk. *Wolff,* 418 U.S. at 563–66, 94 S.Ct. at 2978–80. *See also Ponte v. Real,* 105 S.Ct. at 2194 (reaffirming the validity of *Wolff* after *Helms*). However, when a prisoner faces only a few days of administrative segregation pending a hearing, with no effect on parole, "informal nonadversary evidentiary review" will suffice, with "some notice" to the prisoner and an "opportunity to present a statement." *Helms,* 459 U.S. at 476–77, 103 S.Ct. at 874.

Thus, the Supreme Court has established at least two levels of due process in prison disciplinary proceedings: the elevated *Wolff* standard requiring an adversary proceeding, advance written notice, and other safeguards; and the lower *Helms* standard. This Court has held that a prisoner facing disciplinary segregation for slightly less than a month fell under the *Helms* rather than the *Wolff* standard. *McCrae,* 720 F.2d at 866. This Court has not, however, drawn a clear boundary between the two standards.

The sanctions faced by Dzana in the instant case were unique. Like McCrae, Dzana was placed in disciplinary segregation for approximately a month. Unlike McCrae, however, Dzana's discipline had further consequences. The INS, at its request, was sent the records concerning disciplinary actions taken against Dzana in the Orleans Parish prison. The magistrate found that this was standard practice for INS prisoners held on a contractual basis. The INS explicitly cited Dzana's disciplinary record as a reason for withdrawing bond.[2]

---

fident in assuming that the regulations considered in *Martin* remain substantially the same.

**2.** At trial Dzana's counsel stipulated that INS District Director David Lambert, if called, would have testified that he considered Dzana's disciplinary record in deciding whether to withdraw the bond, but that he would have reached the same decision even if Dzana had had no disciplinary record. Record Vol. 3 at 22. Presumably, the INS believed, at the time, that sufficient other considerations militated against bond. The record does not make it clear whether Dzana's counsel stipulated that Dzana's disci-

plinary record *in fact* did not affect the INS' decision, or merely that Lambert would so testify if called. The district court may clarify this question on remand.

In any case, it is clear that the arrangement between the INS and Orleans Parish contemplated that the INS would make use of prisoners' disciplinary records. Due process levels must be determined considering probable consequences as they existed at the time of the hearing. *See, e.g., Wolff,* 418 U.S. at 561, 94 S.Ct. at 2977 (the loss of "good time" credits mandates a certain level of due process, even

The key question in the instant case is whether Dzana, in facing disciplinary segregation and loss of bond, resembles more closely the prisoners in *Wolff*, who faced segregation and loss of good time, or the prisoners in *Helms* and *McCrae*, who faced only segregation. We hold that Dzana falls more naturally into the *Wolff* group. Loss of bond, like loss of good-time credits, can affect the amount of time the prisoner spends behind bars under confinement. To hold that deprivation of good-time credits triggers the *Wolff* guarantees, but deprivation of bond does not, would be to place pretrial detainees in a much worse and more oppressive situation than that applicable to convicted prisoners.[3] Dzana was being held pursuant to an initial denial of asylum which was later reversed. Whatever the formal characterization of the sanctions Dzana received, these sanctions had a more severe practical effect than segregation coupled with loss of good time would have had on a convicted prisoner. It is therefore clear that the prison authorities should have accorded Dzana the process mandated by *Wolff*.

The record reveals that the process actually given Dzana fell short of the *Wolff* standard in at least one respect. Dzana received only oral notice of his disciplinary hearings and the charges against him, usually just before the hearing. Thus, Dzana had little chance to prepare a defense. *Wolff* clearly requires twenty-four hour written notice. 418 U.S. at 563–64, 94 S.Ct. at 2978–79. In addition, Dzana claims that he was denied the right to call certain witnesses,[4] and that he received no written notice of the decision or its basis. On remand, the district court may determine whether Dzana was in fact deprived of these procedural rights.

Finally, we must determine whether Foti, as sheriff, and the other defendants, as prison officials, are eligible for qualified immunity. In *Harlow v. Fitzgerald*, the Supreme Court held that government officials can be held liable for damages when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In 1983, the Eastern District Court of Louisiana found that Orleans Parish prison authorities had an established practice of punishing prisoners with segregation, and loss of good time or parole, without giving those prisoners twenty-four-hour written notice of the charges. *Martin*, 561 F.Supp. at 261. The *Martin* court held that this practice violated a right clearly established by *Wolff*, granting the prisoners damages and an injunction. *Id.* at 261–62. The *Martin* court injunction read:

> Henceforth, all inmates charged with prison violations for which they could possibly be deprived of good-time, or *otherwise suffer* because of their disciplinary record an increased possiblity of same or of a lessening of their chances for parole, shall be given written notification of the charges against them at least twenty-four hours prior to appearing before the prison disciplinary board.

*Id.* at 262 (emphasis added). An explicit determination plus an ongoing injunction of a United States federal district court suffices to inform Orleans Parish officials of Dzana's rights. Under these circumstanc-

---

though that loss is not an "immediate disaster" for the prisoner, and, indeed, its effects may not be felt until after the suit. We believe that the question of whether Dzana's prison discipline actually lengthened his incarceration is best addressed at the damages stage, should Dzana prove liability on remand.

3. In holding pretrial detainees, a prison may impose regulatory restraints, but those restraints may not be so severe that they amount to punishment before trial. *Bell v. Wolfish*, 441 U.S. 520, 535–38, 99 S.Ct. 1861, 1872–73, 60 L.Ed.2d 447 (1979).

4. The magistrate found that Dzana requested no witnesses. Dzana disputed this finding in his objections to the magistrate's findings. Dzana pointed out that he testified about requesting witnesses, while the prison authorities testified only that they could not recall such a request. Our review of the record confirms Dzana's characterization of the testimony. Of course, under *Helms*, which the magistrate mistakenly applied, the prisoner does not necessarily have the right to call witnesses. 459 U.S. at 476, 103 S.Ct. at 874. Hence, the district court may have felt no compulsion to resolve this factual dispute.

es the defendant officials find no shelter behind qualified immunity.

## III. CONCLUSION

The district court applied the wrong standard in measuring the process due Dzana in his prison disciplinary hearings. Therefore, the case must be reversed and remanded. On remand, the district court may consider what procedures were actually followed in Dzana's disciplinary hearings, and whether Dzana suffered more than nominal damages.

REVERSED AND REMANDED.