United States Court of Appeals,

Fifth Circuit.

No. 93-3456.

Edward GIOVANNI, Plaintiff-Appellant,

v.

Bruce LYNN, Secretary, Department of Correction, State of Louisiana, et al., Defendants-Appellees.

April 3, 1995.

Appeal from the United States District Court for the Middle District of Louisiana.

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

In this case, we are called on to decide whether a state prisoner placed in extended lockdown for disciplinary violation after a constitutionally adequate hearing, has a protected liberty interest in being released from lockdown when the violation is administratively expunged from his record for failure of the Secretary of the state Department of Corrections to act on his appeal within the 120-day limit imposed by the prison disciplinary rules. We hold that no protectible liberty interest is created by this appeal procedure and therefore affirm the judgment of the district court dismissing appellant's claims.

**Facts and Proceedings Below**

Plaintiff-appellant Edward Giovanni (Giovanni) is an inmate at the Louisiana State Penitentiary at Angola (the Prison). On August 22, 1988, Prison officials issued an incident report charging Giovanni with planning an escape and possessing materials necessary

1

to effectuate an escape.[1]  A full disciplinary hearing was held on August 24, at which Giovanni was found guilty and sentenced to extended lockdown.  Under the Prison's disciplinary rules, extended lockdown is an appropriate penalty for Giovanni's violation.  *See* State of Louisiana Department of Public Safety and Corrections, Disciplinary Rules and Procedures for Adult Prisoners 4 (February 5, 1986) ("No prisoner can be placed in extended lockdown for any reason unless he has been afforded a full hearing before the Disciplinary Board and was found guilty of ... being a serious escape risk ...").

Giovanni filed an appeal on August 27, 1988.  Prison regulations give the Secretary of the Louisiana Department of Correction 120 days to grant or deny a prisoner's appeal; any appeal not processed within the 120-day limit is automatically granted.  Solely because the Secretary failed to take any action on Giovanni's appeal within the 120-day period, the appeal was "granted" on February 22, 1989.  According to the Prison's Chief Legal Counsel, however, "such "granteds' are considered technicalities.  While the report *is* to be removed from the inmate's disciplinary record for the purpose of future action, no other remedy is necessary.  He/she will not receive any return of any privilege lost."  (Emphasis in original).  Giovanni was

---

[1]Prison security had received reports from confidential informants inside the Prison that Giovanni and another prisoner were attempting to make a key and were planning an escape.  Based on this information, Prison officials searched Giovanni's cell and locked hobby shop box.  They found a pair of wire cutters and a round file inside the hobby shop kit and a homemade metal key in a "butt can" underneath Giovanni's bed.

notified that his appeal had been "granted" on April 27, 1989, and the disciplinary report was expunged from his record on April 28, 1989.

At that time, inmate appeals were processed by a three-member panel in a closed review procedure. Continued lockdown status was reviewed about every ninety days thereafter by a lockdown review board, again in a closed procedure. Giovanni's case was periodically reviewed by the board pursuant to these procedures, but it was determined that he posed a continuing threat to security, and he remained in extended lockdown. The lockdown review reports indicated that Giovanni was not released from extended lockdown in part because of the nature of his original offense.[2] Although the disciplinary report had been expunged from Giovanni's record, a summary of the charges was placed in his file.[3]

On March 27, 1990, a state court held a hearing on a writ of

---

[2]At the hearing before the magistrate judge, various Prison officials testified that the nature of the original offense would be an important consideration in their decision whether to keep an inmate in extended lockdown and that, if such information were not part of the record, they would seek it out. They also testified, however, that the decision to keep an inmate in extended lockdown was based on the inmate's entire disciplinary history, not merely any particular incident. The most recent record document shows that Giovanni's disciplinary record included some twenty-three separate citations, of varying degrees of seriousness, including an April 2, 1987, report for threat to security, for which Giovanni was placed in extended lockdown.

[3]According to an exhibit Giovanni submitted at the February 9, 1993, hearing before the magistrate judge, the decision to place such a summary of the disciplinary action and the reasons for it in an inmate's file after the report has been expunged is made by the Disciplinary Board on a case-by-case basis and has long been the policy of the Prison.

habeas corpus by another Angola inmate. *Fulford v. Smith,* No. 11,602 (20th Judicial Dist., La. March 27, 1990). The court there decided that, when an appeal was "granted" because of the Secretary's failure to respond within 120 days, the inmate's disciplinary report must be expunged and that, at each subsequent periodic review, the inmate must be given notice and an opportunity to be present. Pursuant to this new procedure, Prison officials reviewed Giovanni's status on April 1, 1990, and released him from extended lockdown on April 4, 1990.

Giovanni filed the present suit on September 26, 1989, challenging the fairness of the August 24, 1988, disciplinary hearing and the timeliness and outcome of his subsequent appeal. Specifically, and most significant for present purposes, he complained that he was denied due process because, although his appeal had been "granted," he had not been released from extended lockdown. He sought monetary and injunctive relief under 42 U.S.C. § 1983. The Prison moved to dismiss Giovanni's claims under Rule 12(b)(6). The magistrate judge recommended that most of Giovanni's claims related to the procedures employed in his August 24 disciplinary hearing be dismissed, and the district court adopted those recommendations and granted the Prison's motion to dismiss in part on May 17, 1990.[4] However, taking the allegations of Giovanni's complaint as true and noting that the Prison had brought

---

[4]The district court also adopted the magistrate judge's recommendation to consolidate Giovanni's original suit with a subsequent complaint he had brought against additional defendants.

4

forth no evidence to disprove them, the magistrate judge found that Giovanni's claim that the granting of his appeal for lapse of the 120-day response period entitled him to be returned to his former custody status, stated a claim for denial of a protected liberty interest that could not be dismissed under Rule 12(b)(6).

The magistrate judge held a hearing on February 9, 1993, to consider this remaining claim. He noted that Giovanni's arguments that a prisoner has a protected liberty interest in remaining free from extended lockdown, based on this Court's decision in *McCrae v. Hankins*, 720 F.2d 863 (5th Cir.1983), were wide of the mark because that interest was not implicated when, as in Giovanni's case, the inmate had been lawfully placed in extended lockdown. The magistrate judge found that neither the 120-day automatic grant of appeal rule nor the state court decision in *Fulford* created a protected liberty interest in being released from extended lockdown and recommended dismissing the suit with prejudice.[5] The district court adopted the magistrate judge's recommendations and dismissed the suit with prejudice on June 2, 1993.

It is this order that Giovanni now appeals. In his *pro se* brief, Giovanni addresses only the asserted liberty interest created by the practice of expunging disciplinary reports when the 120-day period has passed without action by the Secretary on the appeal. We therefore do not reach the other findings of the

---

[5]The magistrate judge also determined that Giovanni had no protectible liberty interest arising from either the Louisiana Administrative Procedure Act or a remedial consent decree entered into by the Prison in an earlier suit. *See infra,* note 6.

magistrate judge's report adopted by the district court. *See supra,* note 5.[6]

## Discussion

In the context of prisoners placed in more restrictive confinement, a protected liberty interest can arise in one of two ways: when the restriction is imposed for a punitive (as opposed to an administrative) purpose, and when a state regulation creates a liberty interest. *Mitchell v. Sheriff Department, Lubbock County, Texas,* 995 F.2d 60, 62-63 (5th Cir.1993). Assuming, *arguendo,* that Giovanni's lockdown was for a punitive, as opposed to an administrative, purpose, under our holding in *Mitchell* the process due would be that prescribed in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). It is not contended in this appeal that the August 24, 1988, hearing did not fully satisfy all the requirements of *Hewitt.* Moreover, *Hewitt* does not require that there be any provision for appeal.[7] Consequently, the failure to act on Giovanni's appeal could not deprive him of the process he was due by virtue of the assumed punitive nature of the lockdown.

---

[6]In any event, previous decisions of this Court support the magistrate judge's report in these respects. *See Green v. McKaskle,* 788 F.2d 1116, 1123 (5th Cir.1986) (holding that remedial decrees do not create constitutional rights); *Martin v. Blackburn,* 581 F.2d 94, 94 (5th Cir.1978) (per curiam) (holding that failure of prison officials to follow Louisiana Administrative Procedure Act did not state a claim under section 1983).

[7]Nor, indeed, is provision for appeal, following an adequate hearing, required under the more stringent standards of *Wolff v. McDonnell,* 418 U.S. 539, 562-73, 94 S.Ct. 2963, 2978-82, 41 L.Ed.2d 935 (1974), applicable to loss of good time credits (as to which the state law had created a liberty interest).

6

Giovanni's claim, however, is that he had a liberty interest by virtue of the Prison disciplinary rules.

"[A] State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). To satisfy this standard, a regulation must fulfill two requirements: it must "establish[ ] "substantive predicates' to govern official decisionmaking and, further, ... mandat[e] the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (citation omitted). The Supreme Court has also made clear that, to create a liberty interest, the law or regulation at issue must contain "explicitly mandatory language," that is, that it must "requir[e] that a particular result is to be reached upon a finding that the substantive predicates are met." *Id.* at 464, 109 S.Ct. at 1910 (footnote omitted).

This Court has previously held that the Louisiana Department of Corrections Regulations prescribing reasons for placement in extended lockdown were sufficient to create a liberty interest in not being confined to extended lockdown without due process. *McCrae v. Hankins,* 720 F.2d 863, 867 (5th Cir.1983). This is because "[t]he discretion of a Louisiana disciplinary board to place an inmate in extended lockdown is ... substantively limited by "particularized standards or criteria [that] guide the ... decisionmakers' " in classifying inmates to extended lockdown. *Id.*

7

at 868 (citation omitted).[8] Thus, under the regulations, there is a protected liberty interest in not being transferred to extended lockdown from the general prison population. But Giovanni does not challenge before us, and we think the record fully supports, the district court's conclusion that Giovanni was afforded appropriate due process protections at his initial disciplinary hearing.

The essence of Giovanni's position is that he was in substance denied the appeal provided for in the regulations, because the Secretary did not act on the appeal within the 120 days required by the regulation and, although as a result his disciplinary violation was expunged, he was nevertheless not returned to the general prison population nor afforded a new hearing. We reject this contention. The rule states simply, "The Secretary will issue all appeal decisions within 120 days of the date of the last hearing for each case." It contains no other standards or criteria to substantively guide or limit the Secretary in rendering his appeal decisions, nor does it mandate a particular outcome or a particular form of relief should the Secretary fail to render a decision within the time period. In our unpublished decision in *Bay v. Lynn,* No. 92-3409, 990 F.2d 1252 (5th Cir. April 5, 1993) (per curiam), we held that

> "[t]he rules, although providing for "appeal decisions within 120 days,' contain no language that grants a separate right "not to be punished at all if a proper appeal is not conducted.' ... [T]he disciplinary rules do not contain a "substantive predicate' mandating the grant of an appeal or

[8]We also held in *McCrae* that the process which was due for placement in extended lockdown was that mandated by *Hewitt v. Helms. McCrae,* 720 F.2d at 868.

8

any other outcome should the appeal decision not be rendered within 120 days...." *Id.* at 6.

Because the 120-day rule does not satisfy the criteria set forth in *Kentucky Dep't of Corrections v. Thompson,* it creates no protectible liberty interest in being released from extended lockdown. Thus, the general rule that prisoners have no protected interest in a particular custodial classification applies, and Giovanni can state no cause of action under section 1983. *McGruder v. Phelps,* 608 F.2d 1023, 1026 (5th Cir.1979) (citing *Fulford v. Phelps,* 365 So.2d 575 (La.App.1978)).

Moreover, where a liberty or property interest is infringed, the process which is due under the United States Constitution is that measured by the due process clause, not that called for by state regulations. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 539-41, 105 S.Ct. 1487, 1492-93, 84 L.Ed.2d 494 (1985). Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process. *See, e.g., Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir.1994); *Brown v. Texas A & M University,* 804 F.2d 327, 335 (5th Cir.1986); *Levitt v. University of Texas at El Paso,* 759 F.2d 1224, 1230-31 (5th Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985); *Martin v. Blackburn,* 581 F.2d 94, 94 (5th Cir.1978). Thus, in *Jackson v. Cain,* 864 F.2d 1235 (5th Cir.1989), a prisoner-plaintiff alleged "that a constitutional violation occurred because he was not accorded the level of process provided for in the DOC handbook." *Id.* at 1251. We stated: "This argument must fail. A state's failure to follow its own procedural

9

regulations does not establish a violation of due process, because "constitutional minima may nevertheless have been met.' " *Id.* (quoting *Brown* ). The August 24, 1988, hearing fulfilled all the constitutional minima and afforded Giovanni all the process he was due under the United States Constitution. The failure to accord relief (beyond expungement of the disciplinary violation from the record) when the Secretary did not act on his appeal within the 120 days provided by the regulation did not violate the United States Constitution.

Nor does the state trial court holding in *Fulford v. Smith* undercut our decision. *Fulford* places no substantive constraints on official decisionmaking but simply prescribes additional procedures to be followed in rendering what is otherwise still a wholly discretionary decision.[9] As noted, a simple failure to comply with state procedural requirements may be a violation of state law, but it does not constitute a constitutional violation.

We thus hold that, once an inmate has been properly placed in extended lockdown and afforded the full process required by *Hewitt,* the failure to release him to the general prison population or to afford him a further hearing because of the Secretary's failure to act on his appeal within the 120 days specified in the regulation does not violate his due process rights.

**Conclusion**

---

[9]Nor does *Fulford* place inmates who have been assigned to extended lockdown following an otherwise valid disciplinary hearing on the same footing with inmates who have never been found guilty of a violation in the first place. *Fulford* at 53.

The judgment of the district court is

AFFIRMED.