United States Court of Appeals,

Fifth Circuit.

Nos. 95-20435, 95-20620.

Earl Wayne MYERS, Plaintiff-Appellant,

v.

Johnny KLEVENHAGEN, Sheriff, Defendant-Appellee.

Creighton DELVERNE, Plaintiff-Appellee,

v.

Johnny KLEVENHAGEN, Sheriff, Defendant-Appellant.

Oct. 11, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and JOLLY and BARKSDALE, Circuit Judges.

PER CURIAM:

Earl Wayne Myers, proceeding *pro se,* filed a 42 U.S.C. § 1983 prisoner civil rights action against Sheriff Johnny Klevenhagen of Harris County, Texas. Claiming to be indigent, Myers complained that the Sheriff had violated a Texas criminal procedure statute, as well as Myers's constitutional rights, by debiting his inmate trust account for medical services without conducting an indigency hearing. Creighton Delverne, another indigent inmate, also brought suit against Sheriff Klevenhagen under section 1983 for a $3.00 debit to his trust account to cover the charge for a prescription drug. In Myers's action, the district court granted summary judgment for the Sheriff on the grounds that no constitutional violation had occurred and that, in any event, the Sheriff was entitled to qualified immunity from prosecution. In contrast, Delverne's case survived summary judgment and was tried to the bench. Finding that Harris County had violated Delverne's Fourteenth Amendment procedural due process rights, the trial judge rendered a final judgment for Delverne in the amount of $3.00.

On appeal, we appointed counsel to represent Myers and Delverne, and we granted the

Sheriff's unopposed motion to consolidate these factually similar, but procedurally different cases. Based on our conclusion that the consolidated appellate record demonstrates no constitutional violation that is actionable under 42 U.S.C. § 1983, we affirm the grant of summary judgment for the Sheriff in Myers's action, and we reverse the final judgment in favor of Delverne.

I

Although dissimilar in some respects, these cases share a common thread of facts and the same threshold legal issue. We begin our analysis by reviewing the critical facts that are common to both actions. The record shows that both Myers and Delverne were aware of the Harris County jail's newly instituted policy of charging nonindigent inmates for medical care, which was authorized by article 104.002(d) of the Texas Code of Criminal Procedure.[1] According to Myers's own handwritten affidavit, he heard Sheriff Klevenhagen explain the policy and cite to article 104.002(d) in a television interview that was broadcast on the local news. On the next available access date, Myers went to the jail law library and read the statute. After reviewing article 104.002(d), Myers concluded that, because of his indigency, he was exempt from the county's charges for medical care. Delverne testified at his bench trial that he had read about the county's policy of charging nonindigents for medical service before he entered the Harris County jail in August 1992. Thereafter, both inmates sought and received medical services while they were incarcerated. When these medical services

---

[1]At the time that these actions were filed and litigated, article 104.002(d) provided:

> A person who is or was a prisoner in a county jail and received medical, dental, or health related services shall be required to pay for such services when they are rendered. If such prisoner cannot pay for such services because of indigence, as defined in Chapter 61, Health and Safety Code, said county shall assist the prisoner in applying for reimbursement through that chapter or the hospital district of which he is a resident. A prisoner who does not meet the eligibility for assistance payments shall remain obligated to reimburse the county for any medical, dental, or health services provided and that county shall have authority to recover the amount expended in a civil action.

TEX.CODE CRIM.PROC.ANN. art. 104.002(d) (Supp.1995). Although the Texas statute authorized a county to charge all inmates (indigent and nonindigent) for medical services, the record shows that the Harris County Sheriff's Department instructed its clinic personnel and triage nurses by memorandum that no inmate would be denied medical services if the inmate indicated an inability to pay the charges assessed.

2

were requested, each inmate signed a newly developed form labeled "Charge Document," which listed the date and type of medical services that the inmate had received. The form also indicated the amount charged for each service rendered, but it did not contain a printed box or blank where indigent inmates could indicate their status.[2] Both inmates claimed that jail personnel told them to sign the charge document or they would not receive medical services. Delverne specifically testified that he signed the charge document under duress after a nurse told him that he must sign the document before he could receive his prescription.[3] In each case, the jail debited the inmate's trust account for the medical services that each had received, as indicated on the signed charge documents. This debit resulted in negative balances to both Myers's and Delverne's trust accounts.[4]

Believing that the Sheriff had made improper debits to their accounts, both Myers and Delverne allege that they filed internal grievances at the jail. Delverne testified that he believed he

[2]According to the trial testimony of Mr. Don Nichols, medical administrator for the Harris County Sheriff's Department, the county began using the original "Charge Documents" on or about August 3, 1992, when the new medical policy was implemented. Nichols testified that instructions regarding the new policy, written in English and Spanish, were posted in all jail cells. These instructions advised indigent inmates that they could "either refuse to sign or write indigent across the charge ticket." The record also contains memoranda that instructed clinic personnel and triage nurses to write "INDIGENT" on the charge document, if the inmate believed that s/he could not pay the charges because of indigency. Nichols further testified that the Sheriff's Department held meetings with triage nurses to explain the new procedures.

According to Nichols, in September 1992, approximately one month after instituting the initial charge document procedures, the county developed a new form of charge document that contained an additional box marked "Check if indigent/unable to pay." Nichols testified that this was done "to make it easier for inmates to declare their indigent status by simply checking a box."

[3]Major Michael William Quinn of the Harris County Sheriff's Department Support Services Bureau testified that, if a nurse were to act in the manner described by Delverne, the nurse would be acting "outside the policy."

[4]By Myers's own account, his inmate trust account experienced, at one time, a negative balance of $120.00. Without data processing records, however, Myers conceded that he had no way of knowing the actual balance in his account following any given medical service debit that the county made. He stated in court documents that "an exemption of one-hundred dollars ($100.00) is not out of line in this matter."

The record indicates that Delverne's account experienced a negative balance of $1.43.

3

had filled out one grievance form and placed it in a grievance box on the jail's wing. In Delverne's words, his grievance remained "unresolved" at the time that he filed his *pro se* civil rights complaint against Sheriff Klevenhagen. Myers alleged in his complaint that he had "filed numerous grievances and none have been sustained." Myers later submitted in court documents that he had written complaints to: "Mr. Don Nichols, Harris County Jail Medical Department; Sheriff Johnny Klevenhagen, Harris County Sheriff; Mr. Mike Driscoll, Harris County Attorney; Mr. John Lindsey, Harris County Judge; Mr. Kelly Nichols, Harris County Risk Management." Myers informed the district court that all of the foregoing ignored his complaints except Nichols, who held an interview with him.[5]

## II

## A

Although the consolidated cases before us present differing procedural postures that might otherwise require distinct standards of appellate review and analysis, the same threshold legal issue is common to both: that is, whether these plaintiffs have alleged the violation of a constitutional right at all. *Doe v. Hillsboro Independent School Dist.,* 81 F.3d 1395, 1402 (5th Cir.1996), rehearing en banc granted (June 17, 1996) (to state a claim under section 1983, a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States); *Leffall v. Dallas Indep. School Dist.,* 28 F.3d 521, 525 (5th Cir.1994). We review *de novo* the district courts' differing legal conclusions on this issue. *Harris v. Angelina County, Tex.,* 31 F.3d 331, 333 (5th Cir.1994); *see also Siegert v. Gilley,* 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (threshold determination regarding whether plaintiff has asserted a constitutional violation at all is a purely legal question).

## B

At oral argument, counsel for Myers and Delverne stated that debiting the plaintiffs' inmate

---

[5]Other than Myers's own statements, the record contains no evidence of the interview with Nichols. Myers stated in court documents: "When I discussed a hearing with Mr. Don Nichols he said he would take care of it.... I have never been given a reason for denial."

trust accounts was a constitutional due process violation because of the "lack of notice of [plaintiffs'] right to assert [their] indigent status and the lack of opportunity by which to do so." According to the plaintiffs, the debits to their accounts amounted to a deprivation of property because the Sheriff, in debiting an indigent's account, violated the jail's own policy and procedures of not charging indigents for medical services. The plaintiffs further assert coercion on the part of the Sheriff because they claim to have been told by the jail's medical personnel that, unless they signed a charge document, they would not receive medical services. We thus understand the plaintiffs' constitutional claim to be that, by requiring plaintiffs, who were indigent, to pay for medical services without notifying them of their right to assert indigency on the original medical charge document, the Sheriff deprived the plaintiffs of property (i.e., monies in their inmate trust account) without affording them constitutional due process. The plaintiffs seek no injunctive or equitable relief. Instead, as counsel informed us at oral argument, they are merely requesting money damages, or reimbursement, for the charges to their respective accounts. These charges occurred during the initial months of the medical charge policy's implementation. The approximate two-month period of time at issue corresponds to the time during which the Harris County jail used the original form of charge document, which did not contain a printed box to indicate indigency. *See supra* note 2 and accompanying text.

## C

Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met. *Giovanni v. Lynn,* 48 F.3d 908, 912 (5th Cir.1995); *Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir.1994); *Hernandez v. Estelle,* 788 F.2d 1154, 1158 (5th Cir.1986). In determining whether constitutional minima have been satisfied, this circuit has relied upon the holdings of the United States Supreme Court in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Writing for our court in *Murphy v. Collins,* Chief Judge Politz construed *Hudson* to hold that "deprivations of property caused by the misconduct of state officials do not infringe constitutional

due process provided adequate state post-deprivation remedies exist." *Murphy,* 26 F.3d at 543. In *Murphy,* an inmate sued prison officials under 42 U.S.C. § 1983 because the officials had allegedly confiscated his property in violation of the prison's policy requiring notice and an opportunity to be heard. We held, nonetheless, that the prison's violation of its own notice and hearing policy did not infringe upon the inmate's constitutional due process rights because the state tort remedy of conversion was available to the inmate. *Murphy,* 26 F.3d at 544; *see also Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir.1984) (where state provided adequate postdeprivation tort remedy, inmate did not suffer an actionable property loss under section 1983).

More recently, our court has explained that the "*Parratt/Hudson* doctrine dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Brooks v. George County, Miss.,* 84 F.3d 157, 165 (5th Cir.1996) (citations omitted). In essence, the doctrine protects the state from liability for failing to provide a predeprivation process in situations where it cannot anticipate the random and unauthorized actions of its officers. *Id.* The burden is on the complainant to show that the state's postdeprivation remedy is not adequate. *Hudson,* 468 U.S. at 539, 104 S.Ct. at 3206-07 (O'Conner, J., concurring); *Marshall,* 741 F.2d at 764.

Applying this precedent to the appeal at hand, we note that the alleged due process violation is, essentially, a failure to follow the Sheriff's own regulations that results from an unauthorized debit to the plaintiffs' inmate trust accounts, brought about by the coercion (i.e., "misconduct") of jail officials. We further note that the state of Texas provided indigent prisoners such as Myers and Delverne with a statutory postdeprivation remedy of "applying for reimbursement." TEX.CODE CRIM.PROC.ANN. art. 104.002(d) (Supp.1995) (*see supra* note 1 for text of statute). As an added safeguard, article 104.002(d) provided that the county "shall assist the prisoner in applying for reimbursement through [Chapter 61 of the Texas Health and Safety Code] or the hospital district of which he is a resident." *Id.*

Our review of the appellate record in its entirety reveals no evidence that either Myers or

6

Delverne applied for reimbursement pursuant to article 104.002(d), sought assistance with applying for statutory reimbursement, or even requested information about the reimbursement process. This is so despite the fact that both inmates were aware of the statute and expressly cited to article 104.002(d) in their respective handwritten section 1983 complaints.[6] Mindful that the plaintiffs only seek monetary reimbursement on appeal, our review of the appellate record further reveals no evidence that this postdeprivation reimbursement remedy was inadequate.

Moreover, we are convinced on this record that the Sheriff has satisfied, at least minimally, any constitutional due process standards that might be required with respect to notifying indigent inmates of the jail's new medical services policy. The record evidence demonstrates that the Sheriff made efforts to post notice of the policy in all jail cells and that the notice instructed indigent inmates on how to complete the medical forms so as to avoid charges for medical services. The evidence further demonstrates that the jail's medical personnel were instructed by memoranda and in meetings on procedures for completing an indigent inmate's medical charge document. The jail also advised its medical personnel that no inmate would be denied medical services if the inmate indicated an inability to pay.

Plaintiffs allege, however, that notwithstanding the jail's efforts to disseminate information about the new policy, medical personnel required them to sign the charge documents in order to receive medical services. In response to the plaintiffs' allegations, the testimony at Delverne's trial indicates that any such conduct on the part of the jail's medical personnel would be outside of Harris County's medical services policy. *See supra* note 3. Such misconduct on the part of Harris County's medical personnel as alleged by the plaintiffs is precisely the kind of unauthorized conduct addressed in *Parratt/Hudson.* Consequently, as discussed above, such conduct can never serve as the basis for a constitutional due process violation when, as here, the state provides an adequate postdeprivation

---

[6]Referring to article 104.002(d) in his complaint, Myers states: "If Inmate is Indigent the Sheriff is directed to the County Medical Authority for repayment. This is not done by Johnny Klevenhagan." Myers's apparent misconstruction of the controlling statute does not, of course, excuse his own failure to pursue an available remedy.

remedy.

In sum, we conclude that the plaintiffs have failed to state a claim for a constitutional due process violation that is actionable under section 1983. First, with respeche Sheriff met the constitutional minima by posting information regarding the new medical services policy in the jail cells, by distributing explanatory memoranda to the jail's personnel and by holding meetings about the new policy with medical personnel. Second, to the extent that the plaintiffs are claiming that the Sheriff impaired their constitutional rights by failing to follow state procedural law or the jail's own policies and procedures, we must reject this claim under the rationale of *Murphy v. Collins.* Finally, to the extent that the plaintiffs are relying on the alleged coercive conduct of the jail's medical personnel to state their constitutional claim, it is clear to us that under the *Parratt/Hudson* doctrine such conduct was unauthorized and therefore fails to support, in the light of an adequate postdeprivation remedy, the plaintiffs' theory of a constitutional due process violation. Thus, because a postdeprivation state remedy existed, which the plaintiffs have failed to show was inadequate, all these alleged violations fail to state an actionable constitutional claim under section 1983. Having found no constitutional violation on this record, we need not reach the issue of qualified immunity or the other remaining issues raised by the parties in their briefs.

We therefore AFFIRM the district court's order granting summary judgment for Johnny Klevenhagen in Civil Action No. H-93-1993, and we REVERSE the final judgment in favor of Creighton Delverne in Civil Action No. H-92-3338. The judgments below are

AFFIRMED in No. H-93-1993; and REVERSED in No. H-92-3338.

8