**UNITED STATES COURT OF APPEALS** April 15, 2009

**TENH CIRCUIT**

RHELDA HOSTETLER,

      Plaintiff-Appellee,

v.

JUSTIN GREEN,

      Defendant-Appellant,

BONNIE DREWERY; CHOCTAW
COUNTY, OKLAHOMA; LEWIS
COLLINS, Choctaw County Sheriff,

      Defendants.

No. 08-7029
(D.C. No. 05-CV-253-FHS)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Rhelda Hostetler seeks damages from Justin Green pursuant to 42 U.S.C.

§ 1983, alleging that Mr. Green – a jailer at the Choctaw County jail – acted with

deliberate indifference to her safety as an inmate by failing to protect her from

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sexual attack by another inmate. This, Ms. Hostetler asserts, resulted in a deprivation of constitutional rights guaranteed her by the Fourteenth Amendment. Before the district court, Mr. Green claimed qualified immunity and moved for summary judgment. The district court denied summary judgment, finding that there were genuine issues of fact related to Mr. Green's subjective knowledge of the threat posed to Ms. Hostetler and thus whether Mr. Green acted with deliberate indifference. Mr. Green now appeals that disposition, asserting that the facts – even when viewed in the light most favorable to Ms. Hostetler – do not demonstrate a violation of clearly established law. Unable to agree with that assertion, we affirm.

I

Viewing the facts in the light most favorable to Ms. Hostetler, as we must, they reveal that on March 18, 2004, Ms. Hostetler was arrested for traffic violations and placed in Choctaw County jail. Mr. Green was a jailer employed by the Choctaw County jail. He began his shift that day at 5:58 p.m., and worked until 6:10 a.m. the following morning. During the course of this shift, Mr. Green dropped off and picked up inmates' food trays from their cells. Mr. Green was assisted in this task by a convicted male felon, Bonnie Drewery, who had been assigned to the Choctaw County jail by the Oklahoma Department of Corrections.

Sometime in the late evening, Mr. Green and Mr. Drewery began picking up food trays from inmates' cells. Although the cell doors had an opening for the

placement and retrieval of food trays, it was Mr. Green's practice to open the cell door in order to deliver and retrieve those trays. Mr. Green and Mr. Drewery arrived at Ms. Hostetler's cell and Mr. Green opened her cell door and retrieved the food tray without entering her cell. After Mr. Green placed the tray on the cart, Mr. Drewery entered Ms. Hostetler's cell. Mr. Green asked Mr. Drewery three or four times to come out of the cell, but Mr. Drewery ignored these demands and remained inside Ms. Hostetler's cell. Mr. Green, who had other trays to collect and medication to deliver, pushed the cell door shut with Mr. Drewery still inside with Ms. Hostetler. Mr. Green contends that he left Mr. Drewery in Ms. Hostetler's cell for no longer than ten minutes. When he returned to her cell, he heard knocking. He opened the cell door and Mr. Drewery walked out. Mr. Drewery remarked to Mr. Green that Ms. Hostetler was "crazy," but when asked what he had done in the cell, Mr. Drewery answered "nothing."

Ms. Hostetler contends that Mr. Drewery raped her while he was in the cell. She testified that, after having two to three bites of her dinner, she went to sleep. When she awoke, Mr. Drewery was standing by her bed, but she did not know how he had gotten into her cell. She claims that Mr. Drewery prevented her from getting off the bed and then raped her. Ms. Hostetler was released from the jail the following day. Rita Duncan, the Choctaw County Jail Administrator, was present when Ms. Hostetler checked out and reported that Ms. Hostetler did not mention the sexual assault. Ms. Hostetler did, however, call the jail later that day

and tell Ms. Duncan about the assault. Thereafter, the Oklahoma State Bureau of Investigation initiated a formal investigation. Mr. Green was subsequently terminated from his employment.

In due course, Ms. Hostetler filed a complaint against Mr. Green and other defendants pursuant to 42 U.S.C. §§ 1983 and 1988 claiming her constitutional rights were violated when Mr. Drewery raped her while she was being held in the jail. All of the defendants, except Mr. Drewery, filed motions for summary judgment. The district court granted those motions with the exception of a Fourteenth Amendment claim against Mr. Green for failure to protect against an inmate attack.

In considering the claim against Mr. Green, the court began by reciting the standard Ms. Hostetler had to meet to establish a violation of her Fourteenth Amendment rights. First, she had to show that she was "incarcerated under conditions posing a substantial risk of serious harm." Dist. Ct. Op. at 8 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, she had to establish that Mr. Green was deliberately indifferent to her health or safety, a subjective standard that requires the official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

The district court next concluded that there were genuine issues of fact precluding the entry of summary judgment in favor of Mr. Green. In particular,

- 4 -

the court found that there was sufficient evidence in the record to support an inference that Mr. Green "subjectively appreciated the risk of harm to [Ms.] Hostetler in allowing [Mr.] Drewery to remain in her cell." *Id.* at 8-9. The court explained:

> The evidence suggests that Green was aware of the jail policy of not allowing male inmates access to cells in which females were held and of the rationale for such policy, i.e. inmate safety and protection from possible sexual assaults. Green suggests liability cannot be imposed on him absent knowledge on his part that Drewery posed a particularized threat to Hostetler, as opposed to the more generalized threat posed by allowing any male inmate to remain in a female inmate's cell. The Court rejects this construction of the standard set forth in *Farmer* and finds that the evidence presents a genuine issue of fact as to whether Green drew the inference that a substantial risk of serious harm to Hostetler existed when he allowed Drewery to remain unsupervised in Hostetler's locked cell for upwards of ten minutes.

*Id.* at 9.

## II

Mr. Green now appeals the district court's denial of qualified immunity on two grounds. First, he argues that the facts, taken in the light most favorable to Ms. Hostetler, do not establish a violation of Ms. Hostetler's Fourteenth Amendment rights because they do not show that Mr. Green had the requisite subjective intent. Second, he argues in the alternative that the law was not clearly established at the time of the incident. At our direction, the parties filed jurisdictional briefs addressing whether the district court's decision denying

qualified immunity was immediately appealable.  We first address this jurisdictional issue before turning to the remaining merits of this appeal.

A

We have jurisdiction to revisit a district court's denial of a defendant's summary judgment motion based on qualified immunity "*only* to the extent that the appeal is based on an issue of law." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009) (emphasis in original).  Under this familiar exception to the final judgment rule, then, our role is limited to reviewing the district court's "abstract legal conclusions, such as whether the law was clearly established at the time of the alleged infraction." *Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008). "At this stage, however, we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, *or that a plaintiff's evidence is sufficient to support a particular factual inference*." *Id.* (emphasis added).

Under this rubric, our jurisdiction extends only over a subset of the questions Mr. Green asks us to consider on appeal.  It is clear we have jurisdiction over the legal question whether the law was clearly established at the time of the alleged infraction.  But whether we have jurisdiction over Mr. Green's argument that he did not possess the subjective intent necessary to satisfy the deliberate indifference standard of the Fourteenth Amendment is a trickier question.  Typically, we have no authority to revisit inferences the district court

found supportable by the facts, and in this case the district court found tenable the very inference Mr. Green now attacks. *See, e.g.*, Aplt. Op. Br. at 11 (arguing "that [Mr.] Green did not draw the inference of any threat posed by allowing [Mr.] Drewery to remain momentarily in [Ms.] Hostetler's cell."); Aplt. Jurisdictional Br. at 5 ("[T]he District Court erred as a matter of law in finding that any evidence existed that might allow the jury to conclude that Green *drew the inference* that [Mr.] Drewery posed a substantial risk to the safety of [Ms.] Hostetler.") (emphasis in original). But here at least one of Mr. Green's arguments against the district court's drawing of the inference involves a pure and abstract question of law. He protests the district court's reliance on his knowledge of jail policy against allowing male inmates access to the cells of female inmates, asserting that as a legal matter a "violation of a jail policy is *not enough* to overcome [Mr.] Green's claim of qualified immunity." Aplt. Op. Br. at 17 (emphasis in original). In other words, he protests that the district court erred *as a matter of law* in relying on a particular fact in drawing an inference about his subjective knowledge. This is a pure question of law, and we have jurisdiction to consider it.[1] We turn, then, to addressing the merits of Mr. Green's appeal.

---

[1] We note that Mr. Green also challenges other aspects of the district court's use of the jail policy in its opinion, but none presents an abstract question of law. For example, Mr. Green asserts that the undisputed facts show that he "was *unaware* of the possible effects of violating this particular policy." Aplt. Op. Br. at 17 (emphasis in original). But the district court plainly found that the "evidence suggests that [Mr.] Green was aware . . . of the rationale" for the policy

<span style="float:right">(continued...)</span>

B

As always, we assess the district court's grant of summary judgment *de novo*, and view the facts, and all reasonable inferences those facts support, in the light most favorable to the non-movant. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to demonstrate a violation of clearly established law. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009).

We consider first Mr. Green's assertion that the district court impermissibly considered his violation of prison policy as a fact supporting the inference that he was subjectively aware of the risk under which he placed Ms. Hostetler. We entirely agree with him that "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's

---

[1](...continued)
against allowing male inmates access to the cells of female inmates, Dist. Ct. Op. at 9, a finding we have no authority to revisit. In addition, Mr. Green briefly appears to challenge the deliberative indifference standard employed by the district court – asserting at one point that "[i]n effect, the district court adopted and applied a 'knew or should have known' standard . . . [thus] departing from the recognized 'deliberative indifference' standard." Aplt. Op. Br. at 14. Mr. Green, however, does not develop this argument further, and particularly in light of the district court's correct recitation of the deliberate indifference standard in the course of its written decision, we are left uncertain as to what, precisely, Mr. Green's complaint is. Because "we cannot meaningfully review the argument or provide the relief plaintiff seeks," *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 n.11 (10th Cir. 2007), we decline to consider further this challenge.

failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."). However, here the district court did *not* rely solely on a violation of prison policy as supporting an inference of deliberate indifference. It pointed to Mr. Green's knowledge of the policy *and his awareness of its rationale* – "inmate safety and protection from possible sexual assaults" – as one fact, among many, supporting an inference about his subjective knowledge. Dist. Ct. Op. at 9. Surely a guard's knowledge that a policy was enacted *specifically to prevent sexual assault*, combined with his knowledge that he *did violate* that policy, tends to support – even if it does not mandate – an inference that he was aware of an increased risk of sexual assault to Ms. Hostetler when he violated the policy on this particular occasion. *Cf. Hovater*, 1 F.3d at 1068 (where rationale behind enactment of prison policy was unconnected to risk of sexual assault, violation of such a policy did not support an inference that a prison official had subjective knowledge of an increased risk of sexual assault); *Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir. 1988) (where rationale for prison policy – preventing inmate violence – is "evident on the face" of the policy, prison official's failure to enforce the policy can support a finding of deliberative indifference); *Weatherholt v. Bradley*, 2009 WL 646249 (4th Cir. 2009) (unpublished) (reversing grant of summary judgment to prison official on inmate's Eighth Amendment claim where district court accorded insufficient weight to fact that official violated prison

policy because it did not "adequately consider[] the rationale of the prison policy in question"). We thus reject Mr. Green's legal challenge to the district court opinion on this score.[2]

We turn next to consider whether the law was clearly established at the time of the alleged infraction. This inquiry "must be undertaken in the light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 129 S. Ct. at 818. "[T]here must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the

---

[2] In so holding, we have no occasion to decide whether this fact alone is sufficient to create an inference of deliberate indifference. The district court relied not just on a knowing violation of a policy, the rationale of which Mr. Green was aware of, in reaching its decision that a reasonable jury could draw such an inference. The court also relied on the facts of this particular encounter – including the fact that Mr. Green tried three times to call Mr. Drewery from the cell, that Mr. Drewery failed to respond to any of these calls, and that Mr. Green responded not by investigating but by closing the unresponsive male inmate in the cell with a female inmate for 10 minutes. The district court rightly noted that these facts contribute to an overall picture suggestive of deliberate indifference.

right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

Although Ms. Hostetler, as a pretrial detainee, asserts a right stemming from the Fourteenth Amendment Due Process Clause, *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)), in determining whether her right was violated we apply an analysis identical to that applied in Eighth Amendment cases brought under § 1983, *id*.  In doing so, we readily conclude that it was clearly established by 2004, when the alleged infraction took place, that an inmate has an Eighth Amendment right to be protected against prison guards taking actions that are deliberately indifferent to the substantial risk of sexual assault by fellow prisoners.  *See Farmer*, 511 U.S. at 833-34; *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) ("[A]n inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates.").  Indeed, when we were faced recently with an inmate's claim arising from sexual assaults beginning in early 2005, we expressly rejected the prison officials' defense that clearly established law didn't provide them notice that they could not take actions deliberately indifferent to a substantial risk of prisoner-on-prisoner sexual assault.  We observed that "[t]he Supreme Court and the Tenth Circuit have repeatedly and unequivocally

- 11 -

established an inmate's Eighth Amendment right to be protected from substantial risks of sexual assault by fellow prisoners." *Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir. 2008). No legal transformation took place after the events at issue in this case in 2004 and before those in 2005 that formed the basis of liability in *Howard*, such that we might say the defendants in *Howard* were on notice of the illegality of their conduct while the defendant here was not. Indeed, Mr. Green doesn't offer any such argument along these lines. Accordingly, we cannot help but reject his challenge to the district court's holding that the law was clearly established at the time of his actions such that he was on notice that his actions ran afoul of the Constitution.

*Affirmed.*

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge