# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60716

United States Court of Appeals
Fifth Circuit

**FILED**
April 23, 2020

Lyle W. Cayce
Clerk

RANDY C. WILLIAMS,

      Plaintiff–Appellant,

v.

JACQUELINE BANKS, Southern Mississippi Correctional Institution Superintendent; RON KING, Superintendent; HUBERT DAVIS; TIMOTHY MORRIS; JENNIFER ROBERTS, Case Manager; UNKNOWN COLEMAN, Lieutenant,

      Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

Before OWEN, Chief Judge, and SOUTHWICK and OLDHAM, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:

Randy Williams, an inmate in the custody of the Mississippi Department of Corrections (MDOC), sued several prison officials in their official and individual capacities under 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to the risk that another inmate would harm Williams, thereby violating the Eighth and Fourteenth Amendments. The district court granted summary judgment to the defendants. We affirm.

**I**

While in prison, Williams joined and became a high-ranking member of

a gang known as the Gangster Disciples. As a gang member, Williams made "a populous band of enemies." In 2010, a rival gang—the Vice Lords—ordered a "hit" on him. Although Williams left the Gangster Disciples in 2014, the Vice Lords did not retract their order that Williams be murdered. Prison officials attempted to address the many threats against Williams by placing him in protective custody, moving him to different correctional facilities, and allowing him to make an official list of other inmates that he believed were dangerous to him and from whom he should be separated, known as "red tagging."

In the early morning of July 26, 2015, an inmate named Eric Ward, who was a member of the Vice Lords gang, stabbed another inmate, Jonah Jackson, during an altercation over a television. The record does not establish who started the fight. Jackson was given medical attention, and Ward was moved into the same protective custody zone as Williams to separate him from Jackson. There is no evidence in the record suggesting that the defendants knew Ward was a member of the Vice Lords or otherwise posed a threat to Williams when they moved him to Williams's zone. Williams had not red-tagged Ward or told anyone that Ward was a threat to him. Williams does not allege the defendants knew Ward posed a danger to him when they moved him, and Williams himself did not believe Ward was a threat to him at this time. Nonetheless, within hours of being moved to Williams's zone, Ward stabbed Williams. Williams says that Ward "came up behind" him and stabbed him several times in the back of the head, one of his arms, and one of his fingers.

Because of the stabbing, Williams was airlifted to the hospital. His injuries required staples in the back of his head, staples in his arm, and stitches to his finger. Upon Williams's return to the prison, he was placed in lockdown—not to punish him, but because it was the only place left to house him safely. Williams exhausted his administrative remedies against the defendants for allegedly failing to protect him from Ward. Williams then filed

No. 17-60716

suit against the defendants in federal district court.

The defendants are those MDOC officials who Williams informed about the fact that the Vice Lords gang had a hit out on his life. Williams alleged claims against the defendants in both their individual and official capacities pursuant to 42 U.S.C. § 1983 for deliberate indifference in violation of his Eighth and Fourteenth Amendment rights. The parties consented to having a magistrate judge resolve their claims in the district court. Williams and the defendants then filed cross motions for summary judgment. After holding a hearing at which Williams testified, the magistrate judge granted summary judgment to the defendants on the basis of sovereign immunity and qualified immunity. This appeal followed.

## II

We first address Williams's claims against the defendants in their official capacities. Claims for money damages against state officials in their official capacities are generally barred by state sovereign immunity unless Congress has validly abrogated that immunity or the state has consented to suit.[1] Here, Williams's use of 42 U.S.C. § 1983 does not disturb Mississippi's state sovereign immunity.[2] Mississippi also has not waived its state sovereign

---

[1] *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (internal citations omitted)); *see also Alden v. Maine*, 527 U.S. 706, 712-13, 729-31 (1999) ("The phrase [Eleventh Amendment immunity] is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . ."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-58 (1996).

[2] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

immunity and consented to suit in federal court.[3] Therefore, Williams's claims against the defendants in their official capacities are barred.

## III

We next address Williams's deliberate indifference claims against the defendants in their individual capacities. Although the magistrate judge dismissed these claims based on qualified immunity, "[we] may affirm the district court on any grounds supported by the record and argued in the court below."[4] Prison officials "have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates."[5] "Not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation, however."[6] To be successful on such a claim, a plaintiff must prove that (1) "he is incarcerated under conditions 'posing a substantial risk of serious harm,'" and that (2) "the prison official's state of mind is one of 'deliberate indifference' to the prisoner's health or safety."[7] A deliberately indifferent state of mind requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[8] "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial

---

[3] *See* MISS. CODE ANN. § 11-46-5(4) (West 2020) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

[4] *Maria S. ex rel. E.H.F. v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (citing *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir. 1997)).

[5] *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *see also Brown v. Plata*, 563 U.S. 493, 510 (2011) ("Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment.").

[6] *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834).

[7] *Id.* at 400-01 (citing *Farmer*, 511 U.S. at 834).

[8] *Farmer*, 511 U.S. at 837.

No. 17-60716

risk of serious harm."[9]

Williams alleges two theories for his deliberate indifference claims against the defendants. The first theory is that the defendants violated Williams's Eighth and Fourteenth Amendment rights when they failed to protect him from Ward, who belonged to a gang that the defendants knew had a hit out on Williams. The second theory is that the defendants violated Williams's constitutional rights because they placed Ward into Williams's protective custody zone instead of following MDOC policy and placing Ward in lockdown. We address each theory in turn.

### A

The magistrate judge correctly granted summary judgment on Williams's first theory of liability. There is no evidence in the record to suggest that the defendants knew Ward was a member of the Vice Lords gang or otherwise posed a specific threat to Williams when they moved him into Williams's zone. Even Williams, when asked if he perceived Ward as a threat at the time Ward was moved into Williams's zone, testified, "Not really. Not as a threat right—not right then." Moreover, there is no evidence that Ward attacked Williams because of the hit ordered by the Vice Lords. In short, there is no evidence that the defendants were aware of the risk that Williams contends Ward posed. Thus, the defendants could not be said to have disregarded that risk with deliberate indifference.[10]

### B

The magistrate judge also correctly granted summary judgment on Williams's second theory of liability. "Our case law is clear . . . that a prison

---

[9] *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 645, 649 (5th Cir. 1996) (en banc)).

[10] *See Farmer*, 511 U.S. at 826 ("[P]rison officials may not be held liable if they prove that they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted.").

official's failure to follow the prison's own policies, procedures[,] or regulations does not constitute a violation of [the Eighth or Fourteenth Amendment], if constitutional minima are nevertheless met."[11]  Here, the defendants did not disregard "an excessive risk to inmate health or safety."[12]  Ward's altercation with Jackson concerned a television.  It was unrelated to Williams or anyone else in Williams's zone.  Ward had been separated from Jackson, and Ward had roughly twenty hours from the time of that altercation in his cell for his anger to subside before he was moved to Williams's zone.  The record does not indicate that Ward had ever been in an altercation with anyone other than Jackson prior to Ward's altercation with Williams.  The record also does not state that Ward initiated the altercation with Jackson.  Williams did not alert any prison officials that Ward was a threat, and he did not believe Ward to be a threat.  These facts are insufficient to impute to prison officials the knowledge that Ward posed a substantial risk of serious harm to anyone, including Williams, in Williams's prison zone.[13]

\*     \*     \*

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[11] *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (first citing *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995); then citing *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994); and then citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)); *see also Spann v. Strain*, 726 F. App'x 265, 266 (5th Cir. 2018) ("[A] state's failure to follow its own rules does not constitute a due process violation." (citing *Myers*, 97 F.3d at 94)); *Scheidel v. Sec'y of Pub. Safety & Corr.*, 561 F. App'x 426, 427 (5th Cir. 2014) ("[V]iolations of prison rules do not alone rise to the level of constitutional violations and, therefore, such claims are not actionable under § 1983." (citing *Hernandez*, 788 at 1158).

[12] *See Farmer*, 511 U.S. at 837.

[13] *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) ("An inmate's history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." (citing *Norman v. Schuetzle*, 585 F.3d 1097, 1104-06 (8th Cir. 2009), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *see also Sanders v. Goodween*, No. 12-440-SDD-RLB, 2013 WL 5818610, at \*6 (M.D. La. Oct. 29, 2013) ("[T]he mere fact that the offending co-inmate may have been involved in one or more prior inmate-on-inmate confrontations does not compel a finding that the determination to house the two inmates in a two-person cell at DWCC amounted to deliberate indifference.").