# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 19, 2021

Lyle W. Cayce
Clerk

No. 20-20365
Summary Calendar

JANA K. LANDRY,

*Plaintiff—Appellant*,

*versus*

PILAR LABORDE-LAHOZ; SUNIL ATHAVALE; SHARON LAMBI;
HARRIS COUNTY; STEVEN BEUSCH; MARY SQUYRES; KELLI
TAYLOR,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-370

Before DAVIS, STEWART, and DENNIS, *Circuit Judges*.

PER CURIAM:*

On behalf of her deceased son, Matthew Nelson, Jana K. Landry has brought claims pursuant to federal and state law against Harris County, Texas, the Texas Department of Criminal Justice ("TDCJ"), and several

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-20365

state and county employees. Landry appeals (1) an order of the district court dismissing two of the individual defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and (2) an order of the lower court granting summary judgment to the remaining defendants. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

### A. Facts

On November 14, 2014, Nelson was booked into the Harris County jail after prosecutors charged him with intent to deliver 4 to 200 grams of methamphetamine. Between that date and April 1, 2015 (when Harris County transferred Nelson into the custody of TDCJ), Nelson met with numerous medical and mental-health providers. Nelson's first such encounter occurred on the day he arrived at the jail. During the intake process Nelson jumped from a bench trying to land on his head. Jail staff transported him to the hospital where he admitted to using crystal meth that morning and to having suicidal thoughts.

The next day, Nelson returned to the jail and met with Dr. Conrad Gibby, who observed that Nelson felt depressed "because [he] felt wrongly accused and [would] be [in jail] the rest of his life."[1] Harris County then sent Nelson to Dr. Sunil Athavale to perform a psychiatric assessment. During Dr. Athavale's evaluation, Nelson informed the psychiatrist that "he was trying to kill himself yesterday at [the] booking area," that he met with another psychiatrist as a teenager "for acting out," and that he once cut his wrists 15 years prior "out of frustration." Dr. Athavale admitted Nelson to the jail's mental health unit and placed him on suicide precautions because

---

[1] On January 20, 2015, a jury sentenced Nelson to 63 years in prison on the meth charge.

Nelson "want[ed] to try to find any way he can to die." The psychiatrist also prescribed medication for his depression.

On November 16, 2014, a nurse practitioner in the mental health unit, Hazel Wooding, examined Nelson and continued him on suicide precautions even though he appeared "alert, calm and cooperative." The next day Nelson met with Dr. Najeed Riaz, who also continued him on suicide precautions even though Nelson denied having suicidal thoughts. Dr. Riaz then removed Nelson from suicide precautions on November 18 after conducting a suicide-risk assessment, which indicated that Nelson presented a low risk of taking his own life. Six days later, Dr. Riaz met with Nelson once again and observed that Nelson "ha[d] shown a good response to current [treatments], appear[ed] calm, pleasant and cooperative, [and] denied any suicidal ideation." Dr. Riaz discharged Nelson to a step-down unit, maintained his medications, and requested that he follow up with the mental health unit in one month.

The next day Nelson met with Sherry Burton, a medical intern, who observed that he appeared "pleasant," "goal directed," and "denied being in any acute psychological distress." Two weeks later, Nelson had a mental-health checkup with Angela Jones, a health practitioner. Jones recommended that Nelson return to the jail's general population after he continued to deny suicidal ideation or psychological distress.

In addition to the one-month follow up with Dr. Mireya Hansen, Nelson met with two registered nurses in December 2014. All three medical professionals reported that Nelson did not present with suicidal ideation. Dr. Hansen continued Nelson on his depression medication. Separately that same month, Nelson met with two additional medical professionals at the jail who assessed his hypertension. The first, Sharon Lambi—a physician assistant—recorded an elevated blood-pressure reading but did not modify

any of his medications. The second, Dr. Syed Rahman, increased the strength of Nelson's medications nine days later having observed that Nelson maintained an elevated blood pressure. Lambi met with Nelson after a few days after he met with Dr. Rahman and prescribed two new medications for blood pressure and cholesterol since his pressure remained high.

Two months passed without any further mental-health incidents. But on March 13, 2015, an inmate notified Detention Officer Girma Abebe that Nelson had cut his neck. Abebe then discovered Nelson using a payphone with "a big gash" on his neck. After handcuffing Nelson, Abebe inquired with Nelson how he had received the neck wound. Nelson replied that he had "cut [him]self while shaving [his] face." As Abebe escorted Nelson to the medical clinic for treatment, Nelson "broke free from [her] grip and tried to slam his head into the wall." Once they arrived at the clinic a nurse cleaned Nelson's neck injury and referred him to psychiatry. Later that day, Nelson saw Dr. Gibby and another psychiatrist, Dr. Pilar Laborde-Lahoz. Dr. Laborde-Lahoz reported that Nelson "vehemently denie[d]" cutting his neck to commit suicide. After observing that Nelson appeared "extremely depressed . . . because [Nelson] thought his [girlfriend] wanted to break up with him," Dr. Laborde-Lahoz conducted a suicide-risk assessment. The test indicated a slightly elevated risk of suicide than the assessment performed about four months prior, but the risk level remained in the low range. Dr. Laborde-Lahoz then prescribed new medications for mood stability, sleep, anxiety, depression, and ADHD.

On March 30, 2015, Nelson had a panic attack because of severe pain in his legs. An officer escorted Nelson to the medical clinic, but a nurse informed Nelson that he was unable to receive any pain medicine since it would interfere with upcoming doses of other daily medications. After returning to his cellblock, Nelson got up from his chair and ran head first into a wall. Nelson was taken on a stretcher to the medical clinic where he told the

treating nurse, Stacy Barton, that he "ran [his] head into the wall to knock [him]self out because no one [would] listen to [him] about [his] legs."

On the morning of April 1, 2015, Harris County transferred Nelson into the custody of TDCJ's Gurney Unit. Nelson's medical records and a health form arrived with him. The form, which was completed by Registered Nurse Rosemary Ojih, indicated that Nelson did not currently have suicidal ideation but that he had a history of suicidal behavior, including Nelson's November 2014 attempt to hit his head on the floor and his childhood wrist-cutting incident.

Nelson received several assessments are part of TDCJ's intake process. First, Mary Squyres, a licensed vocational nurse, performed an initial screening during which Nelson indicated that he did not have a history of suicide nor currently had any suicidal thoughts. Stephanie Cruz, an administrative technician at the Gurney Unit, and Kelli Taylor, the Gurney Unit's psychotherapist, then each independently evaluated Nelson's mental health status. Both assessments revealed normal behavior, while neither revealed Nelson to have any suicidal thoughts. Finally, Sgt. Christopher Thorn conducted an offender-assessment screening during which Nelson denied having any mental-health issues.

At the completion of these assessments, Nelson was escorted to his cell where he began to complain that the cell felt claustrophobic. After Nelson spoke with Sgt. Kyle Beusch about his complaint, Beusch asked another inmate to try help him calm Nelson down. Nelson then spoke with the inmate and become "very calm." Around 4:45 PM, Nelson requested a medical grievance form from Officer Donna Lane but did not notify prison staff that he had any suicidal thoughts. Nonetheless, about 30 minutes later Officer Lane discovered that Nelson had hung himself with a bedsheet from his cell.

*B. Procedural History*

The operative complaint asserted the following claims: (1) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 et seq. against Harris County and TDCJ; (2) Eighth and Fourteenth Amendment violations under 42 U.S.C. § 1983 against all defendants; (3) municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Harris County; (4) medical malpractice under Texas law against Lambi; (5) wrongful death under Texas law against all defendants; and (6) survival claims under Texas law against all defendants.

The district court dismissed Landry's claims against Laborde-Lahoz and Athavale under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. After proceeding through discovery, Harris County, TDCJ, and the remaining individual defendants moved for summary judgment. Landry's response solely addressed her *Monell* claim against Harris County. The district court awarded summary judgment to each of the defendants on all of Landry's claims.

Landry timely appealed.

## II. STANDARD OF REVIEW

We review orders granting summary judgment de novo. *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016). "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d

605, 611 (5th Cir. 2018) (internal citations quotation marks omitted). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). However, "[w]e must view the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick*, 901 F.3d at 611 (quoting *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008)).

## III. Discussion

As an initial matter, we note that our review is limited to Landry's *Monell* claim against Harris County since she failed on summary judgment to address the defendants' arguments as to her other claims. *See Davis v. City of Alvarado*, 835 F. App'x 714, 718 (5th Cir. 2020) (citing *Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017)). And even if she had, Landry has otherwise abandoned an appeal of the other claims by solely briefing her *Monell* claim against Harris County. *See id.* at 717 n.2 (citing *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010)).

"Although a municipality can be liable under § 1983 when [] allegedly unconstitutional action results from a policy or practice that is responsible for the individual's injury, *see Monell*, 436 U.S. at 690 (1978), it is well established that there must be an underlying constitutional violation for there to be a claim under *Monell*." *Taite v. City of Fort Worth Texas*, 681 F. App'x 307, 309 (5th Cir. 2017) (citing *Kitchen v. Dallas County, Texas*, 759 F.3d 468, 483 (5th Cir. 2014)); *see also Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) ("While municipalities can be sued directly under § 1983, *Monell* establishes that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.'" (quoting *Davidson v. City of Stafford*, 848 F.3d 384,

395 (5th Cir. 2017), *as revised* (Mar. 31, 2017))).[2] Harris County argues that the district court properly dismissed Landry's *Monell* claim because she did not show that Harris County officials violated any of Nelson's constitutional rights. We agree.

Landry contends that Harris County officials violated Nelson's Eighth Amendment right to have his serious medical needs met "by not disclosing the fact that he was actively suicidal when he was transferred to TDCJ." "To show a violation of the Eighth Amendment, the plaintiff must prove: (1) objective exposure to a substantial risk of serious harm; and (2) that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (citation and internal quotation marks omitted). Deliberate indifference to a prisoner's serious medical needs refers to the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (brackets omitted). A plaintiff satisfies the "extremely high standard" for proving deliberate indifference "only if [s]he [proves the defendant] (1) knows that [the] inmate[] face[s] a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citation and internal quotation marks omitted).

While "[s]uicide is an objectively serious harm implicating the state's duty to provide adequate medical care[,]" *Arenas*, 922 F.3d at 621, Landry has not demonstrated that any Harris County official acted with deliberate

---

[2] A county is considered a municipality for the purposes of *Monell* liability. *See Hampton Co. Nat. Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 224 (5th Cir. 2008).

indifference toward Nelson's medical needs. The record shows that after attempting suicide upon his admission to the Harris County jail, officials evaluated his mental status, treated his ailments, and placed him on suicide watch. Nelson was discharged back into the prison's general population only after showing the requisite improvement in his mental health. Once Nelson attempted to hurt himself again by cutting his neck and running head first into a wall, he did not indicate to any official that his actions were a product of suicidal thoughts. And when Harris County officials transferred Nelson into the custody of TDCJ, they sent Nelson's medical records and a form noting his history of suicide attempts along with him, as required by state law. *See* TEX. CODE CRIM. P. § 42.09(8)(a) (listing the different types of documentation required to accompany an offender when he or she is transferred from county to state custody, including the type of health form that accompanied Nelson and "a copy of any mental health records, mental health screening reports, or similar information regarding the mental health of the defendant"). As the district court observed, this evidence "is inconsistent with any inference of deliberate indifference." Moreover, given the multiple psychological assessments that TDCJ officials themselves performed on Nelson when he arrived at the Gurney Unit, Landry has not established how any additional information that Harris County officials could have flagged for their TDCJ counterparts would have led TDCJ officials to handle Nelson's intake any differently.

Still, Landry suggests that Harris County officials ignored her pleas to consider Nelson as suicidal when he denied having such thoughts. The record, however, does not support such an inference. Landry first observes that she wrote a letter on March 14, 2015 to Harris County sheriff, Adrian Garcia, informing him that Nelson was suicidal. However, Landry testified that the letter instead praised the Harris County officials who responded to Nelson's neck-cutting incident. She further notes that she called the Harris

County jail on March 30, 2015 to warn the jail staff that Nelson was suicidal. But Landry did not specifically notify jail officials that her son was suicidal; rather, she simply stated that she was "concerned about him." Such evidence does not show that Harris County officials disregarded a known risk that Nelson would take his own life.

Finally, Landry relies on several cases in support of her argument that the Harris County officials violated her son's Eighth Amendment rights. Yet each of these cases is inapposite.

The first case, *Hyatt v. Thomas*, held that an officer did not subjectively disregard a known risk that an inmate might commit suicide even though the officer placed the inmate in a cell with an object—a plastic bag— that the inmate used to end his own life. 843 F.3d 172, 178–80 (5th Cir. 2016). Thus, *Hyatt* does not lend any support to the conclusion that a Harris County official acted with deliberate indifference here.

*Converse v. City of Kemah, Texas*, the second case upon which Landry relies, is also inapt because it involved an appeal of a dismissal under Rule 12(b)(6). 961 F.3d 771, 773 (5th Cir. 2020). The question on summary judgment is whether the party has shown, given the evidence in the record, that a reasonable juror could find in favor of the party on that claim. Yet a plaintiff does "not have to submit evidence . . . at [the motion to dismiss] stage." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). Hence, *Converse* does not help us determine whether this case presents any genuine disputes as to whether a Harris County official acted with deliberate indifference.

The last case upon which Landry relies—*Taylor v. Riojas*—also does not support her argument because that case involved a factually distinct claim involving unsanitary prison conditions. 141 S. Ct. 52, 54 (2020).

No. 20-20365

In sum, we cannot conclude that any Harris County official acted with deliberate indifference in this case because Landry has not established that at least one such official "dr[ew] the inference" that Nelson might commit suicide. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Given this, the district court properly granted summary judgment on Landry's *Monell* claim against Harris County.[3]

## IV. CONCLUSION

When tragedies occur, such as a suicide, there is a desire for answers. But when defendant-officials "respond[] reasonably" to a substantial risk of serious harm, holding them liable cannot be one of them, "even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[3] Because we hold that Landry has not shown a constitutional violation underlying her *Monell* claim, we decline to reach the substance of that claim.